MYERS *vs.* SMITH.

A proposition, made by one party, by letter, to another party at a distance, containing a specific offer, which is unconditionally accepted by the latter, will constitute a valid contract between them.

A bargain thus evidenced is to be deemed closed when nothing mutual between the parties remains to be done to give either a right to have it carried into effect.

From the moment when the minds of the contracting parties meet, signified by overt act, the contract is obligatory. And whatever amounts to the manifestation of a formal determination to accept an offer of a contract of sale, communicated to the party making the offer, is an acceptance which will bind the bargain.

But where the letters of a person proposing to purchase indicate that an interval is meant to be provided for, during which the property is to be held by the owner until the former can examine it, and determine in what manner it shall be disposed of; and the conduct of the purchaser lends confirmation to that conclusion—as by his going to the vendor's place of business without funds to pay for the property, and without any arrangement to procure funds for that purpose, and without providing any means of taking away the property—this will not be deemed an executed and completed *contract*, mutual in its obligations, but merely a *negotiation* inchoate and unperfected.

An acceptance of an offer made by letter must be in the words of, or must be entirely accordant with, the terms and conditions of the offer, to bind the party who makes the proposition.

Thus, where an offer was to sell malt "delivered" on the boat at W., and the acceptance was of the malt "deliverable" on boat; *Held* that this was a manifest variance from the terms of the offer.

Though an offer and demand of performance may be necessary to atone for an apparent laches, and to put the other party in default, yet they assume the existence of a contract of which the party offering and demanding has a right to require the performance, and they have no effect where there is no existing and obligatory contract to which they may be referred, and to which they are a necessary supplement.

An alleged contract was evidenced by a letter, from the defendant to the plaintiff, dated June 18th, and the plaintiff's answer thereto, dated June 20th. The latter, when transmitted, was not stamped, but a copy in the plaintiff's letter book was stamped, and the plaintiff testified that he stamped the defendant's letter of the 18th, on the day after its receipt, and canceled both of the stamps. *Held* that in the absence of any pretense that the defendant ever stamped his letter, or proof that he ever saw the stamp after it was affixed, or assented to the stamping, or the cancellation, this was not such a stamping as the act of congress requires; and consequently the paper was void.

The person executing the document which requires a stamp is the one to affix it; and in any event it cannot be affixed, nor the cancellation be made, by

Myers *v.* Smith.

another party, without the actual knowledge and express or implied assent of the party who issues the paper on which the stamp is placed.

*Held, also,* that the subsequent appearance of the plaintiff before the United States collector, excusing the omission and procuring him to stamp the letters and cancel the stamps, and to sign his certificate to that effect, did not remedy the difficulty in respect to the want of a stamp.

The person who is to appear before the collector and procure the stamping and cancellation is the person who issued the paper and who should have affixed the stamp. He it is upon whom the penalty of $50 is imposed by section 158 of act of congress; and he can only be relieved by appearing and making the application and securing the indemnity.

If a party having an interest in a paper shall desire it to be thus stamped for his benefit, he can only effect it by procuring the maker or party to be affected by it to appear before the collector and procure the stamping and cancellation.

THIS action was brought on a contract claimed to have been made by letter. The plaintiff was a brewer residing at Ilion, Herkimer county, and the defendant was a maltster, living at Clyde, Wayne county, and having a malt house at Weedsport. The parties lived about one hundred miles apart. On the 10th of June, 1864, the plaintiff addressed the following letter to the defendant:

"ILION, June 10th, 1864.

MR. SMITH: Dear Sir—I understood by Mr. Howe, of New York, you were about to ship a boat load of malt; if you did not sell it at Albany you should take it to New York. I want to buy about ten thousand bushels of four rowed winter made malt, to run our brewery through the months of July and August. One cannot use two rowed malt for summer brewing. Now, what will you sell me ten thousand bushels of four rowed winter made, 54 pounds to the bushel, 2½ off for screenings or dust, cash down, per bushel for? Answer me by mail, or telegraph me, and if the offer will warrant, I will come up and see it. Respectfully yours, J. MYERS."

This letter was followed by an answer from Smith, the defendant, dated June 14, 1864, and by a second letter from the plaintiff, dated June 15th. On the 18th of June, the defend-

ant wrote the following letter to the plaintiff, dated Clyde, June 18th;

" J. MYERS, Esq. Ilion : Dear Sir—Yours of the 15th inst. came to hand, and I have refrained from answering till now, expecting to hear from parties I was negotiating with, before receiving your letter. The malt I have for sale is at Weedsport. I will sell you ten thousand bushels of the malt, 34 pounds to the bushel, 2½ per cent off for screenings, at ($1. 54) one dollar and fifty-four cents per bushel, delivered on the boat at Weedsport. Answer by return mail, and direct the letter to Weedsport.

        Respectfully yours,       THOMAS SMITH,
                             per G. O. Smith."

[Five cents internal revenue stamp, cancelled by J. M. June 20th, 1864.]

This was received by the plaintiff Monday June 20th, who answered it within an hour after it was received, and mailed an answer at Ilion, addressed to the defendant at Weedsport. This letter was as follows :

                   " ILION, June 20th, 1864.

THOMAS SMITH : Dear Sir—Your letter under date of June 18th came to hand this Monday forenoon. I will take your malt, ten thousand bushels, deliverable on boat at Weedsport, at 154 cents for 34 pounds to the bushel, and 2½ off for dust or screenings. I will be up as soon as I can get away from home, which will be the last of this week, or the fore part of next week. Respectfully yours,     J. MYERS."

[U. S. revenue stamp five cents, cancelled June 20 by J. M.]

The plaintiff telegraphed the defendant June 22d, and on the 23d he went to Weedsport ; on his arrival there he met defendant's son at the cars, who told him his father was at Clyde. The plaintiff went to Clyde, and saw the defendant there the same day. The plaintiff had the defendant's letter of June 18, and a copy of his own, of June 20, each with a five cent revenue stamp on, canceled. Both letters were read. The

plaintiff told the defendant he had come up to make arrange-
ments *to receive* the malt. The defendant replied, he thought
he had not malt enough for him—he had been shipping a
boat load the day before. The defendant said he did not get
the plaintiff's letter of June 20th, *from Weedsport,* as soon
as he ought; it was sent by private conveyance from Weeds-
port. The plaintiff replied, he was not to blame for that;
he sent it as he was directed. Defendant's son (who it seems
attended to the business at Weedsport) said the plaintiff was
not to blame for that. The load spoken of that had been
shipped, contained 14,000 bushels of malt, and was taken
from Weedsport. The defendant told the plaintiff he did not.
know but he would let him have what was on the boat if it
was not sold in Albany; and inquired where the plaintiff
would take it. The plaintiff replied, if the defendant would
let him have what was on the boat he would pay freight and
charges, and take it at Ilion, Albany or New York, as was
most convenient. The defendant said he would go to Albany
and see what he could do, and if the contract there was not
binding he would let the plaintiff have it. The parties went
to Weedsport, to see how much malt was left, and found from
five to six thousand bushels. The defendant told the plaintiff
if the malt on the boat was sold, he would let him have to
fill his contract the quantity at Weedsport, and make up the
balance somewhere else. June 24th, the defendant, from
Albany, telegraphed the plaintiff at Ilion, the malt on the
boat was sold. The plaintiff then inquired when defendant
would deliver the malt at Weedsport. About June 30th,
the plaintiff received a telegram from defendant at Albany,
stating, " I will see you on my return, Friday or Saturday.
The defendant did not call on the plaintiff, or give him any
further answer. July 12th, the plaintiff sent Mr. Lawrence to
Clyde, to make arrangements to receive the malt and pay for it,
and gave him a letter to the defendant, authorizing him to re-
ceive the malt. Lawrence obtained no malt. July 14th, the
plaintiff went with the money to Clyde, and saw the defendant,

and told him he came up to receive the malt, and pay for it. The defendant said he had got done with the plaintiff, and had no malt for him. The plaintiff then wrote the defendant he had been ready and was ready to receive the malt at Weedsport and pay for it, as provided by letters of June 18 and 20, any time he would notify plaintiff, &c. The plaintiff had a letter-press copy made of his original letter of June 20, and a duplicate of the letter. The plaintiff affixed a five cent revenue stamp on the letter press copy of the letter, and canceled it before the original was sent. He also affixed a five cent revenue stamp to the defendant's letter of June 18, the day after he received it, June 21. He did not know he had a right to stamp the defendant's letter until he took counsel. The original letter of the defendant to the plaintiff, of June 18, when read in evidence, had a canceled five cent revenue stamp on. The copy produced by the plaintiff of his own letter of June 20, when produced and read in evidence, also had on it a canceled five cent revenue stamp. The letter press copy of the plaintiff's letter was produced in evidence, and had a five cent canceled revenue stamp on also. Three canceled five cent revenue stamps were on the letters, at first.

On the trial, the plaintiff, to meet an objection made to the evidence, appeared before the United States collector for the district including Herkimer county, paid him ten cents, satisfied the collector that any omission to duly stamp the contract, at the time it was made, was by inadvertence, and not with any fraudulent intent to defraud the United States out of the stamp duty, or to evade or delay the payment thereof, and the collector remitted the penalty of $50, and affixed and canceled on two five cent revenue stamps, said letters (making five five cent revenue stamps used in all,) and wrote and signed on said letters his certificate to that effect. The letters thus stamped, with the collector's certificate thereon, were then read in evidence.

At the close of the testimony, the court suggested that it would hear a motion to dismiss the complaint, founded on

objections to the validity of the contract, the plaintiff being prepared to prove its breach and the amount of damages. Thereupon the defendant's counsel moved for a nonsuit on the following grounds :

1. All the letters taken together fail to establish any final and unqualified proposition on the one side to sell, and on the other to buy, as alleged in the complaint.

If the alleged contract is confined to the two letters of June 18 and 20, then the proposition of the defendant contained in his letter was not so accepted by the plaintiff in his answer as to fix and bind the defendant. The defendant was not bound to wait for the plaintiff until the 15th of July, at which time the plaintiff demanded performance and the alleged breach occurred.

2. The contract alleged is one which the statute requires must be in writing, and by act of congress, although in writing, was void unless stamped in the manner prescribed. Several of the letters relied upon never have been stamped. Nor was the contract stamped in any manner at the time when the rights of the parties became fixed.

If the contract was void by the act of congress at the time of the alleged breach, the plaintiff cannot recover in this action for a breach which is alleged to have occurred while the contract was so void for want of the proper stamps.

The court granted the motion on these two grounds ; to which ruling and decision the plaintiff's counsel duly excepted, and the court ordered that the exceptions be heard in the first instance at the general term.

*F. Kernan*, for the appellant. I. There are only three questions raised by this case. 1st. Does the evidence in the case fail, as a question of law, to establish a contract binding on the defendant, independent of the stamp question ? 2d. Was the contract invalid, as a question of law, for want of a stamp ? 3d. Was there any question for the jury touch-

ing the validity of the contract? (This proposition is possibly embraced in the first two.)

II. The proposition in the defendant's letter of June 18 is a clear, distinct proposition, offering to sell on the terms specified, and *calling for an immediate answer*. The letter of the plaintiff of June 20 is an unconditional acceptance of the proposition in the very terms of the offer, and without qualification. The plaintiff says, "I will take your malt," &c. When the plaintiff mailed that letter at Ilion, a complete and binding contract was made between the parties. (6 *Wend.* 103. 1 *Kern.* 441. 20 *Barb.* 42. 4 *Paige,* 17.)

No time of delivery and payment being specified, the law supplies it. In such case the contract is, each party shall have a reasonable time in which to perform. And what is a reasonable time is to be determined in view of the circumstances of the case. (16 *Pick.* 227, 231. 2 *E. D. Smith,* 86. 3 *Sandf.* 585.) What is a reasonable time under the circumstances, is a question of fact for the jury. (3 *Sandf.* 585.)

III. Nothing in the last clause of the plaintiff's letter of acceptance, dated June 20, was intended to or did qualify his acceptance. It suggests no qualification. It contains not even an inquiry. It states when the plaintiff personally expects to be at Clyde, which may or may not be important information to the defendant. (20 *Barb.* 42, 47, 61. 4 *Paige,* 17.) Would that clause be any obstacle to the defendant suing the plaintiff on the contract? 1. The intent of the parties governs. (1 *Metc.* 9, 3.) It is manifest it was the intent of the plaintiff to accept the proposition, and both parties understood their minds had met on the terms of the contract. 2. The subsequent conduct of the parties is competent evidence to show their intent, and to confirm and ratify the contract. (1 *Cush.* 89. 13 *John.* 294. 6 *Wend.* 122, 123.) 3. The subsequent conduct of the parties shows clearly that each one intended to make a contract, and both parties supposed a contract had been concluded. Neither party at any time suggested that the acceptance was qualified, or that

a contract had not been made. Three days after the plaintiff mailed his acceptance at Ilion, the parties met at Clyde. They read both letters, each of which was then stamped, and the plaintiff stated to the defendant he came to make arrangements to receive the malt. The defendant did not intimate that there was no contract, but proposed to fulfill it. He stated to the plaintiff he would deliver him the malt he had on boat in transit, if it was not sold in Albany, and if it was sold, he would deliver him the five thousand to six thousand bushels he had at Weedsport, and get the balance somewhere else, to fill the contract. This is conclusive evidence of what each party intended by his letter, and that their minds had met on a contract. 4. The contract being complete, an empty boat was to be obtained and sent to Weedsport. The defendant and his men, to deliver the large quantity of malt, were to be at Weedsport ready, and the plaintiff was to get his money and go to Weedsport when the defendant was there, or some one who could represent him. When the defendant made the proposition he was at Clyde, and when the plaintiff accepted it he was at Ilion. It was therefore eminently proper, if not necessary, without any intent to qualify the contract, to notify the defendant when he expected to be there, so that there might be no unnecessary delay. If the defendant was not to be at home then, or was otherwise engaged, he might make any suggestion he desired. 5. Suppose the last clause of the letter read : " I will come up and receive the malt, and pay for it the last of this week or the first of next," would that qualify the contract ? He first fully accepts the defendant's offer, and then gives him that notice without imposing it as a condition to his acceptance that he should assent to it, or that he should fix that time as the day of performance. Any claim that it qualified the contract must rest solely on the ground that it extended the time in which the plaintiff was to receive and pay for the malt. And that would depend upon the question, whether the time named was a reasonable

time for the conclusion of the contract within which to re-
ceive the malt, &c. If it was a reasonable time, then the
time was not extended. And whether or not it was a rea-
sonable time, was under all the circumstances a question of
fact for the jury, which the court could not dispose of by a
nonsuit. (3 *Sandf.* 585.) The time was a reasonable time,
under the circumstances. It is clear the plaintiff intended
by the last clause, to give the defendant notice when he would
be up to receive and pay for the malt, so that he might be at
home and in readiness to deliver. It had no relation to the
making of the contract. It was a suggestion founded on a
contract made, and looking to its performance. That is what
the letter, fairly construed, means. That also appears from
what the plaintiff said to the defendant, when he went to
Clyde and saw him the same week, and in three days after
the letter was written, "I told the defendant I had come up
to make arrangements to receive the malt." Suppose the
plaintiff had said, instead of that last clause: "If I come up
the last of this week, or the first of next, will you be ready
to deliver the malt?" would that have qualified the accept-
ance? It would be an inquiry touching the performance of
the contract, not its making. Has he said more than that?

IV. The defendant is not at liberty to allege that the ac-
ceptance was qualified, as an excuse for his non-performance.
He put his neglect, or refusal to perform, on an entirely dif-
ferent ground, to wit, the want of malt, &c. No such defense
is specified in the answer, or was thought of until the trial,
as that the acceptance was qualified. And if the clause in
the letter in question qualified the acceptance, it was com-
petent for the parties to waive it, and affirm the contract.
They at least did that.

V. The contract in this case is evidenced by the letters,
each of which is written by a person residing eighty miles
from the other. Neither letter is signed by both parties.
Both letters are necessary to prove the contract. It has been
held to be a sufficient note or memorandum of the contract

Myers *v.* Smith.

in writing, signed by the parties to be charged thereby to take the case out of the statute of frauds. But it is submitted that neither letter is a contract or instrument required to be stamped by the revenue laws. Neither paper is a contract. Neither party at any time has both papers, so that he can stamp them both. Neither could be made liable for the penalty for making or issuing a contract and not stamping it. Neither party has in fact signed a contract which can be proved only by *both* letters, (although they are held to sign sufficiently to avoid the mischiefs the statute of frauds was designed to guard against.)

VI. If the letters are adjudged to be a contract, which is required to be stamped by the revenue laws, it was sufficiently stamped. 1. A five cent revenue stamp was affixed to the letter press copy of the plaintiff's letter of acceptance, before the original was mailed and canceled. The very next day a copy of that letter was made, and another five cent stamp was put on that copy, and canceled. 2. The plaintiff put a five cent stamp on the letter the defendant sent him containing his offer, which was accepted the day after it was received. This letter was stamped before the plaintiff's acceptance could have reached the defendant. 3. Manifestly, if the party was required to stamp this contract, it was stamped as far as it was practicable to do so, and that is all that can be required. 4. The copy of the plaintiff's letter to the defendant, and the original letter of the defendant to the plaintiff, were each stamped with a five cent revenue stamp, canceled when the plaintiff saw the defendant at Clyde, June 23d, and were examined by both parties. Both parties were satisfied, and affirmed the contract, and agreed to perform it.

VII. It is clear that the contract is evidenced by the last two letters—those of the 18th and 20th of June. There was no fraud attempted on the revenue law. The duty was fully paid. At least three five cent stamps were used. The end proposed by the revenue law, so far as this contract is concerned, was attained. The government received the tax.

VIII. The revenue law provides that any person who shall make, sign or issue, or cause to be made, signed or issued any instrument, without the same being duly stamped, or having thereon an adhesive stamp for denoting the duty chargeable thereon, "*with intent to evade the provisions of this act,*" (the revenue law) shall forfeit $50, and such instrument shall be invalid and of no effect. The instrument is invalid only when the stamp has been omitted with intent to evade the statute. There is no pretense this is such a case. If there was even evidence of any such intent, it was a question of fact for the jury, and would not justify the non-suit. (*Revenue Laws*, § 158.) 1. The fact that these stamps were used, is evidence that there was no intent to evade the statute. 2. The collector's certificate shows no intent to evade the statute. It was so proven before him, &c.

IX. If this was a contract which required a stamp, and it had not been stamped before, the stamping by the revenue collector was sufficient, and made the contract *as valid, to all intents and purposes, as if stamped when made. or issued.* (*Revenue Act*, § 158.) The contract was not void, but it could not be used as evidence until the penalty was paid or remitted, and the instrument stamped. 1. The English stamp act provides that no contract can be used as evidence unless stamped, &c. Yet the contract is held not to be void and available from the beginning, when properly stamped. 2. One party cannot make a contract alone. If the contract was void, it was the same as though no instrument had been made. In that case, it could not be made a living, valid contract by one party. It is made such because the contract is not void, but cannot be used as evidence merely until the tax is paid. 3. By § 163 of the revenue act, as amended in March, 1865, (before the trial,) provides that no instrument made before that shall be deemed invalid and of no effect because it was not stamped, provided it is now stamped.

X. It is no answer to say the contract was not stamped when the alleged breach occurred. That question did not

Myers *v.* Smith.

arise on the motion decided. Nor was there any decision on that point. Whether the plaintiff could recover, there being a valid contract, is a question which will arise on the whole case when it is presented. The question now is, was there— is there—a valid contract? But if the question was now before the court, whether a contract stamped by the collector was to be deemed valid from the time it was stamped, or from the time it was made or issued, we insist the statute makes it valid from the time it was made, (with such exceptions as are specifically made in the statute.) The statute so reads. So far as the parties are concerned, it is manifestly right they should be bound by their contract. The effect the want of a stamp shall produce on the contract is exclusively the result of the statute. It was competent for congress to say it should have no effect, or it should prejudice the parties only under particular circumstances. None of its provisions in this regard are to protect the parties or for their benefit, but simply to collect the revenue for the government. Parties act, and must act, on their contracts in view of the fact that any objection for want of a stamp can be cured.

There is no hardship in it. They can stamp the instrument themselves, and remove all questions, whenever they please. There is no trouble except in the desire of the party objecting to get rid of his own contract.

XI. Section 158 of the revenue act, as amended by the act of 1866, (page 45,) especially the last part of it, shows the intention of congress to be to make the instrument good from the time it was made.

*R. Conkling,* for the respondent. I. No error was committed by the court below in granting the defendant's motion to nonsuit the plaintiff on the ground that he had failed to establish an unqualified and final contract. 1. It was the duty of the court to give the legal interpretation of the papers submitted to it. 2. The letters and other evidence in the case fail to establish the unqualified acceptance and immedi-

ate action required by the defendant's proposition to sell and deliver, as is alleged in the plaintiff's complaint. All the letters commencing June 10, 1864, were introduced by the plaintiff to establish the alleged sale and purchase, and are to be taken together. All the plaintiff's letters manifest the intention to come up and examine the malt, if the price suits, and that intention implies the right to reject the malt if not satisfactory ; therefore the contract was incomplete, and could not be enforced. Thus, June 10th, the plaintiff writes : "If the offer will warrant, I will come up and see it." June 15, he writes : " I see what you say about malt being mixed. * * * If the price suits, I will come up and see the malt." June 20th, the plaintiff writes : "I will take your malt deliverable on boat at Weedsport." * * "I will be up as soon as I can get away from home, which will be the last of this week or fore part of next week." The plaintiff testifies : " On 23d June, when I went up, I had no boat there to receive the malt, and no money beyond $1000 ; this in a draft on New York, and I had a little spending money besides." These letters and this testimony indicate clearly an intention by accepting the price, to provide for an interval during which he could compel the defendant to hold the malt until he could examine it. No other construction of the letter of June 20th will account for the conduct of the plaintiff in going to Weedsport without money, or arrangement for money, to pay for the malt, and without boat, or arrangement for boat, to receive it. In construing a written instrument, it is proper to look at all surrounding circumstances. (2 *Cowen & Hill,* 1399. *Greenl. Ev.* 327. 1 *Barb.* 635. 3 *id.* 79, 87.) The letter of the defendant, June 18th, was to sell ten thousand bushels of malt at $1.54, " *delivered* on the boat at Weedsport." The plaintiff's reply of June 20th, was for malt " *deliverable* on boat at Weedsport." The use of the word deliverable was not accidental. The plaintiff carefully selects it in his letters of both the 15th and 20th of June. It means, and was intended to give the plaintiff an option, as to

when and whether he would take it off by boat, and would compel the defendant, as the plaintiff demanded; and has alleged in his complaint, to handle over in his warehouse the whole of the 10,000 bushels twice, once to weigh it preparatory to its being loaded, and before the delivery thereof, and a second time to handle it all over again in delivering it on to a boat, when the plaintiff thereafter should have one in readiness. This was not an acceptance of the defendant's proposition. That proposal required the plaintiff's prompt attendance with his money and his boat, and involved only once handling the 10,000 bushels, as it would be weighed simultaneously with delivery on boat. The plaintiff's proposal of June 20th, to be up the last of that week or fore part of the next, was not an acceptance of the defendant's terms. It was no part of the defendant's offer in his letter of the 18th of June, to wait for the plaintiff until the last of that week or the fore part of the next week. He did not agree to risk the fluctuations of the market. He had an agent at Albany, who might, and did sell 14,000 bushels of the malt, and actually had them shipped before the plaintiff's arrival. If the plaintiff delayed his arrival to the evening of the 23d, he did so at his own risk. This was five days after the writing of the defendant's letter, which gave no warrant for such a delay. Ordinary prudence and justice to the respondent required greater promptness in so large a transaction. (*Farmers' Loan, &c. Co.* v. *Hunt*, 16 *Barb.* 521.)

II. The contract alleged, is one which our statute requires to be in writing, and by the act of congress, approved July 1st, 1862, that writing was void unless stamped in the manner prescribed. § 110, subdivision first, of schedule B, requires every sheet or piece of paper, upon which an agreement or contract is written, to have upon it a five cent stamp. § 95, of the same act, declares that without such stamp, such instrument, document or paper, shall be deemed invalid and of no effect. (1.) To render a contract valid under this statute, the stamp must be affixed to the paper, which is the evidence

of the contract or agreement between the parties. It cannot be a compliance with the letter or the spirit of the statute, to affix a stamp to a copy or duplicate thereof, remaining in the hands of the maker. There can be no pretense that a stamp was affixed to the original letter sent to Smith of 20th June. Myers testifies that " the copy" or impression taken from this letter, "was stamped before the original was sent." If the copy or impression in the letter book is deemed to be the *evidence* of the agreement, and a compliance with the law, then the contract is void because it was never delivered, but has always remained in the possession of the plaintiff. The supposed contract was not stamped in any manner at the time when the rights of the parties became fixed. The stamps which have been since affixed, do not revert back so as to put the defendant in default, or give the plaintiff a right of action, as of the time mentioned in the complaint. The plaintiff, by procuring stamps to be affixed to the duplicates of the letters of the 18th and 20th June, 1864, in his possession on the 3d day of May, 1865, by L. L. Merry, collector of the 20th district, is estopped from claiming that they had been properly stamped before that time. (2.) The second proviso of the 158th section of the act of congress, approved March 3d, 1865, cannot apply to this case. The " hereafter," of June 30, 1864, cannot go back to June 20th. All the existence this contract ever had was not later than the 20th. The second proviso of this section contemplates the appearance before the collector of the person who signed the instrument proposed to be stamped, as he is the person who should have affixed the stamp; he it is who *has not affixed the stamp*, and such neglect or omission can only be remedied by him, or with his consent. The words " he or they shall appear before the collector of the revenue," are applicable to the maker of the instrument, and not to " any other party having an interest therein." Such party having an interest, who may be desirous of having a stamp affixed can only effect that object by inducing the maker or person to be affected by it, to appear

before the collector of the *proper district*, and personally direct or consent to affixing the stamp, and without this the collector is not authorized to affix the stamp. This construction is sustained by the power given to the collector in this section, to remit the penalty incurred by the omission or neglect to affix the stamp at the proper time. The neglect or omission to affix the stamp, renders the contract void ; therefore none other than the party to be bound or affected by the act of affixing the stamp, can direct or authorize the collector to act for him.

Myers testifies, " I put the stamp on defendant's letter of June 18th, the day after it was received ; * * * he received it on Monday, June 20th." From this it is evident that the letter of 18th June, (Smith's,) was not stamped until June 21st and then by Myers, and not by Smith, or by his consent or direction. In regard to the copy of the letter marked " C," which appears on its face to have been stamped and canceled on the 20th day of June, the day of its date, Myers testified, on cross-examination, " this duplicate was made after the original was sent. It was copied from the letter book the next day after the letter was sent. This stamp was canceled same day copy was made." It follows, that the copy was not made or stamped until the 21st day of June. He says he called on an attorney at Herkimer, before he stamped it, and it was not canceled until three or four days after he was at Clyde, (25th June.) Consequently, neither the affixing of the stamps to Smith's letter, and the copy of the plaintiff's answer thereto, on the 21st June, 1864, nor that of 3d May, 1865, by the collector, were such a stamping of the supposed contract as is contemplated by the act of congress, which imposes the duty of affixing the stamp upon the party to be bound by it, and subjects the party whose duty it is, to penalties for the neglect. It is as much a personal act as that of affixing the names, and cannot be performed by another without express authority. The pretended contract is, therefore, void for the want of a stamp. (*Hoppock* v. *Plato*, 30 *How. Pr. R.* 120.)

III. There was no contract such as that alleged in the complaint. 1. If there was any contract, it was that the plaintiff should be at Weedsport with the money to pay for, and a boat to receive the malt, within a reasonable time, and without delay ; but it is not so alleged. (2*d Parsons on Contracts, p.* 47, 4*th ed.*) 2. There was no contract to wait till July 15th, as alleged in complaint. 3. There was no agreement to weigh the malt, as alleged. (*See* 2 *Stark. Rep.* 292, *as to effect of stamping.*) 4. If the plaintiff was entitled to receive, and bound to take, the malt on boat without examining it, as alleged in the complaint, it should have been described as mixed spring and winter made malt. 5. The plaintiff's letter of the 20th of June, was for malt *deliverable.* That word is not synonymous with the term delivered. (46 *Barb.* 143. 15 *Wend.* 637.)

IV. It was the province of the court below, to decide what was a reasonable time within which to comply with the defendant's terms, upon the facts and circumstances as presented by the plaintiff, and its decision was right. (2*d Parsons on Contracts,* 48, 49, 4*th ed. Farmers' Loan, &c. Co.* v. *Hunt,* 16 *Barb. p.* 522.) The plaintiff did not go to Weedsport, ready and willing, or for the purpose of paying for and receiving the malt, as alleged in complaint. He went without any respectable portion of the purchase money, and without any arrangements for money or boat. In order to entitle the plaintiff to a delivery of the malt, it was necessary for him to make a tender of the money. (*Atkin and others* v. *Davis,* 45 *Barb.* 44.) There was no reasonable time given to the plaintiff to determine whether or not to receive the malt, or to be ready to perform on his part. The plaintiff was not prepared to pay, and never tendered the money for the malt until July 15th. The court properly held that this was too late. The plaintiff was bound to engage a boat and hands, and have them ready at Weedsport, as is alleged in his complaint. There was no evidence on the trial, that this was ever done. The defendant, although under no obligation, did

Myers *v.* Smith.

what he could to remedy the difficulty occasioned by the plaintiff's negligence. He went immediately to Albany, to see if he could let the plaintiff have the malt, but found that it had been sold.

*By the Court,* BACON, J.   The primary, and, indeed, vital question in this case is whether there was a contract between these parties—an agreement upon which their minds met, executed and complete, or whether it was a negotiation inchoate and unperfected until something should intervene and be determined, in order to give it full effect.   The counsel for the plaintiff is entirely right in claiming that a proposition made by one party by letter to another party at a distance, containing a specific offer which is unconditionally accepted by the latter, will constitute a valid contract between them.   There are not.many cases in the books on this subject, but they speak a uniform language, and state the rule with a clearness that cannot be mistaken.

The leading case in this state is *Mactier* v. *Frith,* (6 *Wend.* 103,) and without recapitulating the facts in that case, it will be sufficient to say that it establishes the proposition that a bargain, evidenced by an offer in writing on one part, accepted on the other, is to be deemed closed when nothing mutual between the parties remains to be done to give either a right to have it carried into effect ; that from the moment when the minds of the contracting parties meet, signified by overt acts, the contract is obligatory, and that whatever amounts to the manifestation of a formed determination to accept an offer of a contract of sale communicated to the party making the offer, is an acceptance which will bind the bargain.

This case was followed, and its doctrine applied, in *Clark* v. *Dales,* (20 *Barb.* 42,) where the proposition was by letter, as follows :  " We will engage to furnish you a boat load of flour the last of next week, same quality sent Gilchrist and Mozer, at $4.76, free to boat."   The answer returned was, " We will take the load of flour as per your proposition of

the 30th inst." Here, as the court say, the proposition was explicit, and its acceptance unqualified. It fixed the price, quality and quantity of the article, and the place of delivery and the time, with sufficient certainty, and was accepted without qualifications, and was therefore complete, and could not be rescinded by either party without the consent of the other.

Bearing these rules in mind, let us look at the alleged contract in this case, and ascertain whether it contains the necessary elements of a complete and obligatory agreement. The complaint alleges that on the 20th of June, 1864, these parties made an agreement in writing, duly subscribed and executed by them, whereby the defendant should sell and deliver to the plaintiff, on boat at Weedsport, ten thousand bushels of malt, at a certain price, which price should be paid on the delivery of the malt, pursuant to the agreement. This is the substance of the complaint, so far as it alleges the existence and character and terms of the contract.

On the trial, the plaintiff commenced by producing the letter of the plaintiff of June 10th, and following it with the correspondence on both sides, until the closing letter of June 20th, by which he claimed the contract was completed. I think the letters are all essential to the case, and that they aid in the conclusion for which we are seeking. Taken together, they manifest an intention on the part of the plaintiff to visit the defendant before the final close of the negotiation, and that, either for the purpose of inspecting the article the plaintiff proposed to buy, or to determine more definitely the time, place and mode of delivery, and until some one, or all of these things were determined, the contract could not be deemed consummated. Thus, on the 10th of June, the plaintiff, after some inquiries about malt, and the terms on which it would be offered, says : "If the offer will warrant, I will come up and see it." On the 15th he writes again, soliciting an offer, and adding : "If the price will suit, I will come up and see the malt." On the 18th of June the

Myers *v.* Smith.

defendant answers, stating the terms on which he would sell ten thousand bushels of malt "delivered on the boat at Weedsport," and to this, on the 20th, the plaintiff replies by letter stating that he would take the malt on the terms stated, "deliverable on boat at Weedsport," and adds : "I will be up as soon as I can get away from home, which will be the last of this week, or the fore part of next." The plaintiff having, in both letters, prior to the 20th, declared his purpose to inspect the malt prior to closing any contract, and on the 20th reiterated his purpose to visit the defendant, the latter was entirely warranted in assuming that the matter was open to further negotiation, and no contract was, or could be closed until that personal inspection had taken place.

Upon these letters, coupled with the oral evidence touching the conduct of the parties, the court ruled that all the letters, taken together, failed to establish any final and unqualified proposition on the one side to sell, and on the other to buy, as alleged in the complaint ; and further, that if the alleged contract is confined to the two letters of June 18th and 20th, the proposition of the defendant, contained in his letter, was not so accepted by the defendant in his answer, as to fix and bind the defendant ; and upon this, and another proposition which arose in the case, the plaintiff was non-suited.

Viewing the letters in their connection and sequence, and as evidential of the purpose of the plaintiff, I think that this ruling was right. The intention to accept the price offered is clear enough, but the letters indicate to my mind with equal clearness that an interval was provided for, during which the malt was to be held by the defendant until the plaintiff could not only examine it, but determine in what manner it should be disposed of. The conduct of the plaintiff lends very strong confirmation to this conclusion, and is hardly susceptible of explanation on any other theory. He went up to Weedsport on the 23d of June, but he went, substan-

tially, without any funds to pay for the malt, and without any arrangement to procure funds for the purpose of payment, and not only without any boat, but without any arrangement to procure a boat, with any view to an immediate or ulterior delivery of the malt.

But again, if we confine ourselves solely to the letters of June 18 and 20, the acceptance was not in the terms of the offer so as to fix and bind the defendant. The offer was to sell the malt in question " delivered " on the boat at Weedsport. The acceptance was of the malt " deliverable " on boat. This is, it seems to me, a manifest variance from the terms of the offer. The words do not mean the same thing ; they require, or may require something to be done quite different as one or the other should be exacted. If the defendant was only required to deliver on boat, the operation was very simple ; it only obliged the defendant to deposit the malt in the boat, necessitating but a single process of handling and weighing. But suppose the plaintiff was uncertain whether he would have it delivered on a boat ; that it might perchance be a good speculation to effect a sale to a third party who might choose some other method of removal. This might, and I think would, require the defendant to separate and handle and weigh the whole 10,000 bushels and hold it ready for delivery in any manner, and perhaps at any time, the plaintiff might direct ; and if the plaintiff at some future convenient season should conclude to have it delivered upon a boat provided by him, it would require the whole mass to be again handled, weighed and delivered. An acceptance must be in the words of, or must be entirely accordant with, the terms and conditions of an offer, to bind a party who makes the proposition. In this case, the variance made the acceptance a different thing from the offer. As thus expressed, it could not have been claimed by the defendant to be binding on the plaintiff, and he could not have maintained an action for its alleged breach ; and for this reason, as well as upon the ground that there was a contingency expressed in the

letter, to wit, the visit of the plaintiff to the defendant and an inspection of the malt prior to a full close of the negotiation, the defendant could not have enforced it as a valid contract against the plaintiff, if he had repudiated its obligations. A contract of this nature must be mutual in its obligations, or it has no binding force upon either party.

I have not deemed it important to consider what effect the subsequent conduct of the parties has upon the question of whether or not there was a binding contract of sale as alleged by the plaintiff. There is certainly nothing in the acts or declarations of the defendant which can be affirmed as a ratification and assent to the terms of the contract, either directly or by implication. What he attempted or expressed a willingness to do, if it could be accomplished, was entirely voluntary on his part, and the effort failing, did not attach to him any liability as for a breach of contract.

The offer and tender, such as it was, by the plaintiff on the 15th of July, might, if that question had fairly and necessarily arisen, have been held by the court as entirely too late. The court did indeed hold that the defendant was not bound to wait until the 15th of July for the plaintiff to demand performance, and I see no error in the ruling. But the question does not seem to me to have any importance in this case. If there was no valid and existing contract between these parties, as the court held, and rightly as I think, then any offer or tender on the part of the plaintiff to perform on his part would be of no importance. Such an offer, however complete, gives no vitality to that which has no life in itself. An offer and demand of performance may be necessary to atone for an apparent laches and to put the other party in default, but they assume the existence of a contract of which the party offering and demanding has a right to require the performance, and they have no effect where there is no existing and obligatory contract to which they may be referred, and to which they are a necessary supplement.

There was another ground on which the motion to nonsuit the plaintiff was granted, to wit, that the alleged contract was not stamped as required by the revenue act. The contract claimed in this case was evidenced by the two letters of June 18 and 20, and consequently both were required to be stamped. The letter of the 20th transmitted to the defendant never was stamped, but a copy in the plaintiff's letter book was stamped, and the plaintiff testifies that on the day after its receipt he stamped the defendant's letter of the 18th and he canceled them both. There is no pretense that the defendant ever stamped his letter, and no proof that he ever saw the stamp after it was affixed, and consequently there can be no claim that he ever assented to the stamping or the cancellation. I am of opinion that this is no such stamping as the act requires, and this being so, the paper is void.

The act ((§ 151) provides that the stamp duty shall be levied upon and collected in respect to the paper upon which it is placed, from the person or party who shall make, sign or issue the same, and a subsequent section provides that the person using or affixing the same shall write the initials of his name and the date when the same is affixed. It is clear to my mind that the person executing the document which requires the stamp is the one to affix it, and that in any event it cannot be affixed, nor the cancellation be made by another party, without the actual knowledge and express or implied assent of the party who issues the paper on which the stamp is placed, neither of which things existed in this case.

The stamping by the collector did not remedy the difficulty. Waiving the question whether this could be done so as to relate back to the date of the letter and render it valid from that time, it seems very clear that the person who is to appear before the collector to procure the stamping and cancellation is the person who issued the paper and who should have affixed the stamp. He it is upon whom the penalty by section 158 is imposed, and he can only be relieved by appearing and making the application and securing the indemnity.

If a party having an interest in the paper shall desire it to be thus stamped for his benefit, he can only effect it by procuring the maker or party to be affected by it to appear before the collector and procure the stamping and cancellation. Without his knowledge, and against his presumed assent, it surely cannot be done, and in this case there is not only no pretense of either knowledge or authority, but it was done at a time and in a manner to which the defendant would most strongly have dissented.

On both grounds, I think, the nonsuit was properly granted, and that the motion for a new trial should be denied, and judgment ordered for the defendant.

Judgment accordingly.

(ONONDAGA GENERAL TERM, April 2, 1867. *Morgan, Bacon, Foster* and *Mullin*, Justices.]