Davis, J.
The substantial averments in appellant’s complaint against appellee are that in February, 1889, appellee was desirous of obtaining the services of a person to act as agent for her in this State to work the State for her interest, attending to all special work for her, and that appellant having had large experience in insurance matters, and an extensive acquaintance in the State, proposed, in writing, to act as such agent in this State for a consideration of $1,800 per year, as follows:
“TerrE Haute, Ind., Feb. 2, ’89.

“Thos. H. Montgomery, Pres., Philadelphia, Pa.:

“Dear Sir—Your letter of January 30th at hand, and contents noted. At one time the interests of the company in Indiana were all in my hands, as a special agent through Mr. Cunningham.
“I believe he was well satisfied with me in this field. I resigned of my own accord and a young man named Wood, from my office, took my place. I believe I could now be of profit to your company, by taking Indiana again all in my charge. I write to suggest this. I am well acquainted all over the State. I believe I understand what the American wants. I can easily, by employing a man who is a resident here, and been in the business with the manager, arrange so that my business in my agency will [not?] fall off any.
“I feel as though I would be willing to take the State and do my level best, not neglecting my local agency, and put the American where she belongs in Indiana. *317 This is a good State, and the business of the ‘American ■ought to grow. As to the compensation, I do not know what it ought to be, but I will make you the proposition to take this State and work it thoroughly, attending to all special work, for $1,800 per year and expenses.
“I submit the matter-to you; should you feel inclined to accept this, I would want to be allowed to visit the home office and get every agency from there, its history, standing, etc., so I could know just your ideas. I could commence March 1, or later if you thought best.
“Yours very truly, B. F. Havens.”
And that appellant, during said month, received notice from appellee that his proposition aforesaid was accepted as follows:
“The American Fire Insurance Company,
“308 and 310 Walnut Street,
“Philadelphia, Feb. 4, 1889.
■“R. F. Havens, Esq., Terre Haute, Ind.:
“Dear Sir—I have your favor of the 1st, and am prepared to make the arrangement with you for special work in Indiana, and on the terms you name, in view of the fact that you can give more time to it than you at first supposed to be in your power to do.
“And we shall be glad to have you begin at your ■early convenience, and to have a visit from you as a start off.
“I imagine that much visiting of our agencies will be needed at the outset, and inspection of risks, so that we may have to continue our present course for adjustments when fires strike us.
“Yours very truly,.
“Thomas H. Montgomery, Pres’t.”
It is further alleged that appellant proceeded to put *318 his affairs in order, and notified appellee in a reasonable time after the acceptance of said proposition, that he was ready to perform his part of the agreement during the whole year thereafter, but appellee failed and refused to perform her part of agreement by furnishing work for him, but refused to do so and employed another agent to do the work; that appellant’s contract was a valuable one, requiring special' experience, and he was unable to obtain like services for that year though he made diligent efforts so to do.
The appellee answered in two paragraphs, the first of which, a general denial, was afterwards withdrawn. The material averments of the second paragraph are:
That at the time mentioned in the complaint appellant was acting as the local agent of appellee at the city of Terre Haute; that appellee was not desirous of employing appellant, as alleged in the complaint, and that, on the contrary, the solicitation for employment came from appellant; that the correspondence referred to in the the complaint, hereinbefore set out, is but a small part of the actual correspondence which took place between the parties, and thereupon appellee proceeds to set out in the answer all the correspondence in connection with such alleged employment, from which it appears that on the 10th of January, 1889, appellant wrote to appellee that he would be pleased to attend to any special work the company could give him, and that such employment would aid him materially, and that he would do all in his power to repay any favor the company might show him. Appellee replied that should the company desire him to attend to any special work they would communicate with him on the matter. Appellant afterwards wrote appellee again, and after some further preliminary correspondence the letters set out in the complaint were *319 written. In answer to appellee’s letter, appellant wrote that it was his intention to visit the company about the first of March. On the third of March he wrote again that he thought he would be there within that week. On the 9th of March he wrote that he had intended to leave for Philadelphia on that day, but that he would be kept back about a week, and that it was his aim to go in on April 1st for business. The receipt of these letters was acknowledged, and on March 19th appellant wrote as follows:
“Agency at Tekee Haute, Ind., March 19,1889.

“Thos. H. Montgomery, Pres’t, Philadelphia, Pa.:

“Deae Sie—Will you be west during March? When I first notified you that I would take Indiana I had a young man to put in my place here at home. I lost him on account of my delay. I have another one now who is anxious to come with me, and I think he will be a better man than the one I missed. He has another offer, and I would not need him in case anything s"hould occur that you would not wish my services. And if you can let me know by wire, on receipt of this letter, when and at what place I will be able to see you, I will be obliged. I want to suggest another thing, that I did not, as I firmly thought day by day for many days I would get east, and that is that I would like to do the whole work, the adjustments and other work. I think I can do it, and can fully explain to you why I am so anxious to.
“Yours very truly,
“B. F. Havens.”
The president replied that he could not then decide on his plans for a trip. On March 25th appellant wrote that he was in first class shape with his home agency, and that he would be able to go to work on April 1st, and that he was confident he could render the company *320 good services, and tliat he would like to have the settlement of the losses and make a clean thing of the whole business. The appellee replied as follows:
“The Amebican Fibe Insubance Company,
“308 and 310 Walnut Stbeet,
“Philadelphia, April 1, 1889.

“B. F. Havens, Esq.:

“Deak Sib—On my return home, I have your favor of the 25th of March before me. Your delays in getting here were the inducement to seek other arrangements for special work in Indiana, as we can well care for adjustments under our present system, in which we desire no change. Hence we are not prepared to confer with you further at this time on the subject of our Indiana work.
“Yours very truly,
“Thos. H. Montgomeey, Pres.”
It is further alleged that there was no other or different correspondence in relation to any alleged employment of appellant by appellee, and that there was no other or different writing, proposition or pretended agreement between the said parties, and that there never was at any time any oral contract or agreement made and entered into between the parties looking to an employment of or contracting with appellee by appellant for special work in the State of Indiana, and that appellant did not ■ at any time make any agreement with appellee for special work, and that appellant, during said alleged time from March 1, 1889, to March 1, 1890, was constantly employed in other business which occupied his whole time and attention, and from which he realized large incomes and profits.
A demurrer was overruled to this answer, and the appellant failing and refusing to plead further, the court rendered judgment on said demurrer.
*321 This ruling presents the only question for the consideration of this court.
Counsel for appellant insist that the second paragraph of the answer does not state facts sufficient to constitute a defense to the cause of action alleged in the complaint; that the correspondence shows that the minds of the parties have fully met on every essential to the contract; that the character of the work, the amount of the consideration and the time for beginning are fixed; that there is no misunderstanding of terms, no preliminaries to be settled between them, and that the contract is complete.
The contention is that the correspondence set out in the complaint conclusively shows that the parties did enter into a contract, and that their minds did meet on all ¡the essentials to the contract, and that where the parties have agreed to all the essentials to a contract, the contract continues until there is a revocation by one or both of the parties, and that whatever may have taken place between the parties after that time could not change that fact; that the agreement, being unambiguous, does not need an explanation, and the subsequent letters set out in the answer can not be used for that purpose.
It is well settled that a proposition made by one party by letter to another -party at a distance, containing a specific offer which is unconditionally accepted by the latter, will constitute a valid contract between them.
The primary question in such case is whether the correspondence shows an agreement upon which the minds of the parties met, or whether the negotiations are inchoate and unperfected until something should intervene and be determined in order to give it full effect. Myers v. Smith, 48 Barb. 614.
*322 Counsel for appellee rely upon the case of Commercial Tel. Co. v. Smith, 47 Hun (N. Y.), 494. This was an action brought by the Commercial Telegram Co. to restrain James D. Smith, as president of the New York Stock Exchange, and others, from interfering with the right of the plaintiff to collect upon the floor or premises of the New York Stock Exchange the quotations of dealing made at such exchange, and the distribution of said quotations to its customers, and the claim of the plaintiff was founded, as in the case at bar, solely upon correspondence between the parties. Some preliminary letters passed between the parties, and, on April 25,1883,. the following letter, with the matters not pertinent omitted, was sent to the plaintiff:
“Committee oe Arrangements,
“New Yore Stoce Exchange,
“New Yore, April 25, 1883.

“Luther E. Shinn, Vice-President Commercial Telegram Co.:

“Dear Sir—I am instructed to forward to you the following plan, adopted by the governing committee, which will form the basis of an agreement with you in the matter of your proposed service upon the floor of the exchange, viz:
“First. A rental shall be paid by any telegraph company at the rate of $18,000 per annum, payable monthly in advance.
# # * m *
“Respectfully, Geo. W. Ely,
“Secretary of Committee.”
On the following day the plaintiff answered this letter as follows:
*323 “The Commercial Telegram Company,
“Executive Oeeices.
“Equitable Building, 120 Broadway,
“New York, April 26, 1883.

“Geo. W. Ely, Esq., Secretary Committee of Arrangements, New York Stock Exchange:

“Dear Sir—Your communication of April 25tli is received. I am instructed by our executive committee to say in reply, that the plan set forth in your letter is entirely satisfactory to this company; that we accept the same, and are ready to execute an agreement upon the basis proposed, whenever prepared and submitted to us.
“I am, very truly yours,
“Luther E. Shinn,
“Vice-President and Gen. Man.”
The court held that the letters did not constitute a contract. We quote from the opinion as follows:
“It is claimed upon the part of the plaintiff that the letter of April 25th contained an entire contract and that upon the acceptance of its terms by the letter of April 26th of the plaintiffs, it became a complete contract, binding upon both parties. It is very important to observe in this connection that although the claim is made upon the part of the appellant that these papers constitute an entire and complete contract, it is admitted upon its own points that there are exceptions as to its completeness, namely, that there is no provision as to the time it should remain in force nor as to the terms and conditions upon which it could be terminated. These deficiencies seem to have struck the counsel for the appellant, they being as they admit essential to the contract; but it is claimed that the law supplies the omission and a perpetual grant is to be inferred because the plaintiff could * perpetually perform the service and because it would be of advantage to the plaintiff to have such a *324 grant rather than one limited in duration. We know of no rule of law applicable to those cases where grants of privileges are silent as to their duration, which measures the duration of such grants by the capacity, or rapacity of the grantee. The very fact of the absence of these essential elements seems to indicate beyond question that the papers under consideration, if there was no other reason, could not be interpreted as containing a contract * * binding upon both parties.”
In the New York case the alleged letter of acceptance says: “I am instructed by our executive committee to say, in reply, that the plan set forth in your letter is entirely satisfactory to this company; that we accept the same, and are ready to execute an agreement upon the basis proposed, whenever prepared, etc.” * *
In the case before us the corresponding letter contains the following language:
“I have your favor of 1st, and am prepared to make the arrangement with you for special work in Indiana and on the terms you name.” * *
In the case of Myers v. Smith, supra, the action was brought on a contract claimed to have been made by correspondence, in which the letters were as follows:

“J. Myers, Esq., Ilion:

“Deab Sib—Yours of the 15th inst. came to hand, and I have refrained from answering till now, expecting to hear from parties I was negotiating with, before receiving your letter. The malt I have for sale is at Weedsport. I will sell you ten thousand bushels of the malt, 34 pounds to the bushel, per cent, off for screenings, at ($1.54) one dollar and fifty-four cents per bushel, delivered * at Weedsport. Answer by return mail, and direct the letter to Weedsport.
Respectfully yours,
“Thomas Smith,
“per G. 0. Smith.”
*325 This letter was answered within an hour of its receipt, and the reply was as follows:
“Ilion, June 20, 1864.

“Thomas Smith:

“Dear Sir—Your letter under date of June 18th came to hand this Monday forenoon. I will take your malt, ten thousand bushels, deliverable on boat at Weedsport, at 154 cents for 34 pounds to the bushel, and 2K off for dust or screenings. I will be up as soon as I can get away from home, which will be the last of the week or the fore part of next week.
“Respectfully yours,
“J. Myers.”
The court in this case held that there was a variance between the proposal and alleged acceptance in the use of the words “delivered” and “deliverable,” and that the proposed visit of the plaintiff to the defendant carried with it the necessary implication that it was for the purpose of inspecting the malt prior to a close of the negotiations. The language of the court is as follows:
“An acceptance must be in the words of, or must be entirely accordant with, the terms and conditions of an offer, to bind a party who makes the proposition. In this case, the variance made the acceptance a different thing from the offer. As thus expressed, it could not have been claimed by the defendant to be binding on plaintiff, and he could not have maintained an action for its alleged breach; and for this reason, as well as upon the ground that there was a contingency expressed in the letter, to wit, the visit of the plaintiff to the defendant and an inspection of the malt prior to a full close of the negotiation, the defendant could not have enforced it as a valid contract against the plaintiff, if he had repudiated its obligations.”
In the case of Martin v. Northwestern Fuel Co., 22 Fed. *326 Rep., 596, a proposition was made by the plaintiff, by telegraph, to sell coal at a certain figure, to which the following reply was made: “Telegram received. You can consider the coal sold. Will be in Cleveland next week and arrange particulars.”
The question before the court was whether these two dispatches made a definite contract between the parties —whether there was a direct unqualified acceptance of the terms offered. The court held that there was not (after citing approvingly the case of Myers v. Smith, supra) in the following language: “So it seems to me that the telegram carrying to the proposed vendor a statement from the supposed vendee that he will come to Cleveland, to his place of business, and arrange particulars, carries with it a fair implication that the particulars are to be arranged before the contract is finally consummated.”
In construing the phrase, “You may consider the coal sold,” Judge Brewer, now on the supreme bench of the United States,. in Martin v. Northwestern Fuel Co., supra, decided that the expression was not a natural one when a definite acceptance of an offer was intended, but was. more equivalent to this: “There is so little to be settled, and I am so sure that all can be arranged, that you are safe in looking upon the sale as closed, and prepare to make your arrangements accordingly. You may consider—you may understand—that this contract is going to be consummated, and that I will come to Cleveland and we will fix it up.”
It is not necessary to go to the full extent of these authorities in this case.
In this case the special work referred to in the correspondence is not made therein certain and definite. There is no provision made indicating how long the pro *327 posed arrangement was to remain in force or the terms and conditions upon which it could be terminated.
Filed Nov. 27, 1894.
Under the circumstances disclosed in the answer, it is proper to look at the whole correspondence between the parties in relation to this subject-matter in order to determine the intention of the parties.
In the letter of appellant written on the 19th of March, .1889, he says:
“I would not need him in case anything should occur that you would not wish my services.”
This language, in connection with his desire to see the president in order to make an arrangement “to do the whole work, the adjustments and other work” is significant as tending to show that he did not regard the contract as complete.
The only language indicating an acceptance of appellant’s proposal, is the expression in appellee’s letter: “I am prepared to make the arrangement with you for special work in Indiana.” There was no unqualified and unequivocal acceptance of appellant’s proposition in terms. It is simply equivalent to saying: “I am ready to execute agreement on terms proposed by you when details are settled.” This is evidently the manner in which appellant understood the correspondence.
In our opinion, there was no error in overruling demurrer to answer.
Judgment affirmed.