John S. Stanley, Gorton James and J. M. Richardson Lyeth, Plaintiffs, *v.* Frank S. Gannon, Defendant.

(Supreme Court, Richmond Special Term, December, 1919.)

Contracts — execution of — option for the purchase of real estate — specific performance — title — meaning of word " defects " — deeds — acceptance — pleading.

The closing of title, payment of purchase price, and delivery of the deeds of conveyance are acts of performance relating not to the creation but to the execution of the contract.

Where though time was made the essence of an option in writing to purchase real estate it was neither expressly nor by necessary implication of the essence of the performance of the contract to convey created by acceptance of the option, the intending purchasers are not precluded from asking specific performance because of their failure to tender the purchase price and demand a deed of conveyance on the last day of the option.

Where an option for the purchase of real estate provides that the title shall be free from defects, the word " defects " will be construed to mean only such valid and reasonable objections as would affect the marketability of the title.

In order to create a contract the minds of the parties must exactly meet in reference to every substantial term of the proposed contract; there must be a clear and unequivocal acceptance of a definite and certain offer without material qualification or variation, and an acceptance incorporating a term, condition or reservation not embraced within the terms of the offer, is equivalent to a rejection.

A letter by which, as alleged in the complaint, plaintiffs accepted an option to purchase real estate of defendants, stated: " We are placing our order for the searching of the title and will pass title upon receiving satisfactory report from the Title Company relative to the same," a qualification not found in the option, and is an ineffectual acceptance thereof and fails to create a contract, and the complaint which prayed a specific performance of the alleged contract will be dismissed upon the merits.

ACTION for the specific performance of a contract to convey certain water-front property.

Carter, Ledyard & Milburn (Edwin de Turck Bechtel, of counsel), for plaintiffs.

Gannon, Seibert & Riggs (Frank S. Gannon, Jr., of counsel), for defendant.

ASPINALL, J. This is an action for the specific performance of an alleged contract made by the defendant to convey to the plaintiffs certain water-front property situated on Staten Island, Richmond county.

The complaint contains two causes of action: *First,* that on September 8, 1919, the plaintiffs and the defendant entered into a contract, in writing, whereby the defendant agreed to convey said premises to the plaintiffs for the sum of $69,000, free from all encumbrances; and *second,* that on March 7, 1919, the defendant, by a certain instrument in writing, did give to the plaintiffs, for the sum of $500, an option for the purchase of said property for the sum of $70,000; that on the 2d day of July, 1919, the defendant, in consideration of the payment of a further sum of $500, gave the plaintiffs an extension of said option, and that on September 8, 1919, while said extended option was in full force and effect, the plaintiffs notified the defendant, in writing, that they accepted the same, and that they agreed to purchase the said premises upon the terms and conditions mentioned in said option, and that the defendant has refused to convey the said premises.

The defendant substantially denies all the material allegations of the complaint. He admits, however, the giving of the option and the extension thereof for the sums of money mentioned therein, and also admits

that he refused to convey the said premises to the plaintiffs.

The determination of this controversy depends upon the legal effect to be given to the option of March 7, 1919, and the alleged acceptance thereof as evidenced by the plaintiffs' letter of September 8, 1919.

The plaintiffs contend that such letter was effective as an election on their part to exercise the option and that thereupon a valid contract was created.

The defendant contends that the letter was ineffective as an acceptance of the option for the reason, among others, that it was not also accompanied by payment or tender of the purchase price and a demand for a deed. His claim, therefore, is, in effect, that not only must the option have been accepted but the resulting contract must have been performed within the time prescribed as the life of the option.

In cases of this character confusion is frequently caused by failure to differentiate between acts essential to the creation of a contract, and acts relating solely to the performance thereof when created. The closing of title, payment of the purchase price and delivery of the instruments of conveyance are acts of performance, relating not to the creation but to the execution of a contract. The instrument of March 7, 1919, was not a contract; it was an offer or option merely, and binding upon the defendant alone. But it possessed potentialities. Upon an unequivocal acceptance of the terms thereof by the plaintiffs, the option as such would cease to exist and in its place would spring into existence a valid contract, conferring mutually enforceable rights and obligations upon the parties thereto. In the present case time is made of the essence of the option by express provision. But nowhere, by express provision, is performance of the contract to be born of the option, to spring into exist-

ence upon its acceptance, required within any pre-
scribed period of time. Time is not expressly made of
the essence of performance of the contract as distin-
guished from the option. Nor is performance of such
contract within the period prescribed as the life of the
option required by necessary implication from the
phraseology thereof, nor may any such inference be
drawn from the acts of the parties. On the contrary,
the defendant by his conduct has effectively disproved
the existence of such an intent in his own mind. Had
he contemplated not only that the option must be
accepted but also that the resulting contract must be
performed within the period specified in the option,
he would presumably, for the purpose of protecting
his legal rights, have prepared a deed and held him-
self in readiness to deliver it upon receipt of the pur-
chase price. He undoubtedly knew that if the option
should ripen into a contract by acceptance, the obliga-
tion of the plaintiffs to tender the price and demand
a deed, and his obligation to tender a deed and demand
the price were reciprocal obligations necessary to pre-
serve the respective legal rights of the parties; and
his unpreparedness in this respect is at variance with
his present contention. Never having prepared him-
self to execute the contract springing from the option
within the period therein specified, how may he log-
ically contend that performance within that period was
actually contemplated by him, or that such requirement
is an inference flowing by necessary implication from
the language of the option? These considerations, it
seems to me, justify the conclusion that, while time was
of the essence of the option, it was not either expressly
or by necessary implication of the essence of the per-
formance of the contract created by its acceptance,
assuming that it was so accepted.

In my opinion, therefore, the plaintiffs are not pre-

cluded from the relief asked, for the reason that they failed to tender the purchase price and demand a deed on the last day of the option. James Option Contracts, §§ 914–919; *Bullock* v. *Cutting,* 155 App. Div. 825; *Myers* v. *Smith,* 48 Barb. 614; *Watson* v. *Coast,* 35 West Va. 463; *Breen* v. *Mayne,* 141 Iowa, 399; *Pennsylvania Mining Co.* v. *Martin,* 210 Penn. St. 53.

The remaining and decisive question, however, relates to the sufficiency of the letter of September 8, 1919, as an acceptance of the option.

Briefly summarized, the option conferred upon the plaintiffs the right to purchase the said property for the sum of $70,000, the deed to be of the character therein specified, and the title to be free from defects. The word " defects " as used in the option must, in my opinion, be held to embrace only such valid and reasonable objections as would affect the marketability of the title.

A plain and unequivocal acceptance of the option, in the terms thereof, without qualification, reservation or exception, would have resulted in a valid contract conferring mutual rights and obligations upon the plaintiffs and the defendant. But I do not think the letter of September 8, 1919, answers this legal requirement. The last paragraph of the acceptance reads as follows: " We are placing our order for the searching of title and will pass title upon receiving satisfactory report from the Title Company relative to the same."

This paragraph, it seems to me, amounts to a condition or qualification, inseparably connected with the preceding portion of the letter, the efficacy of which as an unqualified acceptance it entirely destroys. The clear import of the word " satisfactory " in this connection is that such report must be satisfactory to the plaintiffs. No standard or guide is prescribed to measure their satisfaction or dissatisfaction with the

prospective report. It is a matter of common knowledge that title companies, in entire good faith, reject titles and refuse to insure by reason of objections which a court of equity characterizes as insufficient to justify a refusal to perform. Either consciously or otherwise the phrase in question empowers the plaintiffs, upon plea of dissatisfaction, to base a refusal to perform upon objections not amounting to " defects " of title. The declared purpose of the plaintiffs to pass title if free from " defects " would have sufficed; but the paragraph quoted, declaring an intent to pass title if a prospective report by a title company is satisfactory to them, is a variation. It engrafts into the acceptance a qualification not found in the option. It follows, therefore, that the minds of the parties never met and that the letter of September 8, 1919, was an ineffectual acceptance and failed to create a contract between the parties. It is a well-established rule that, in order to create a contract, the minds of the parties must exactly meet in reference to every substantial term of the proposed contract. There must be a clear and unequivocal acceptance of a definite and certain offer, without material qualification or variation. An acceptance incorporating a term, condition or reservation not embraced within the terms of the offer is equivalent to a rejection. In *Mahar* v. *Compton,* 18 App. Div. 536, the court said: " In other words, there must have been an exact meeting of the minds of the contracting parties in respect to every detail of the proposed contract, and if the precise thing offered was not accepted; or if the acceptance was in any manner qualified by conditions or reservations, however slight they may have been, the universal rule seems to be that no valid contract is thereby established, but that such a modified or qualified acceptance must rather be treated as a rejection of the offer."

The rule is also laid down in the following cases: *Gates* v. *Dudgeon,* 72 App. Div. 562; *Dodsworth* v. *Hannevig, Inc.,* 184 id. 539; *Myers* v. *Smith,* 48 Barb. 614; *Howells* v. *Stroock,* 30 Misc. Rep. 569; *Marschall* v. *Eisen Vineyard Co.,* 7 id. 674; *James* v. *Darby,* 100 Fed. Repr. 224, 228; James Option Contracts, §§ 837, 840, 841.

I am of the opinion that the last paragraph of the letter of September 8, 1919, destroys its efficacy as an acceptance of the proposal contained in the option of March 7, 1919, and that no contract, therefore, ever resulted. I, therefore, dismiss the complaint and direct a judgment in favor of the defendant.

Ordered accordingly.